UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

FEED PRODUCTS NORTH, INC.,

Plaintiff,

v.

RELIANCE INSURANCE COMPANY OF ILLINOIS, INC., AMERICAN FEED INDUSTRY INSURANCE COMPANY RISK RETENTION GROUP, INC., and RANDY LEE,

Defendants.

Court File No. 01-CV-487

MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT OF DEFENDANTS AMERICAN FEED INDUSTRY INSURANCE COMPANY RISK RETENTION GROUP, INC. and RANDY LEE

## I. INTRODUCTION

On December 30, 2004, Plaintiff, Feed Products North, Inc. ("FPN") appeared before the honorable Magistrate Judge Jonathan Lebedoff upon its motion to lift the stay of its claims against Defendants American Feed Industry Insurance Company and Risk Retention Group ("Defendants") in this matter. Defendants appeared and argued against the lifting of the stay on the basis that the parties' Joint Stipulation required a dismissal of Plaintiff's claims against Defendants upon the resolution of Plaintiff's claims against Reliance Insurance Company ("Reliance"), one of the initial defendants.

An order was filed on December 30, 2004, granting Plaintiff's motion and allowing Defendants to bring their motion for dismissal. This memorandum accompanies Defendants' motion and provides the reasons why this Court should dismiss Plaintiff's claims against Defendants.

## II. ISSUE

A. Is Paragraph 10 of the "Joint Stipulation and Proposed Order to Stay All Proceedings" ambiguous, such that the terms "fully and finally adjudicated" are susceptible to more than one meaning, thus allowing Plaintiff to assert its further and additional claims against Defendants although its claims against Reliance are "fully and finally adjudicated" based upon the Notice of Determination?

B. Does the existence of the "Joint Stipulation and Proposed Order to Stay All Proceedings" remove any final issues of material fact in this matter such that summary judgment in Defendants' favor is now appropriate?

## III. UNDISPUTED FACTS

Plaintiff is a Minnesota corporation engaged in the production of animal feed. Reliance is a now-defunct insurance company, that insured Plaintiff. It was registered in Illinois, and maintained a place of business in Pennsylvania. The remaining Defendants are American Feed Industry Insurance Company Risk Retention Group, Inc., an insurance brokerage registered in Iowa that specializes in commercial insurance for the feed industry. Its insurance agent and broker, Randy Lee, maintains a place of business in Minnesota.

Plaintiff served its summons and complaint upon Defendants and Reliance on February 20, 2001 in response to damages it incurred of over $600,000 resulting from a wind storm that occurred on July 7, 2000. Specifically, Plaintiff alleged that it suffered financial losses of approximately $460,000 for damage to its buildings, electrical systems and conveyor system; $80,000 in lost business income stemming from this damage; and $24,000 in expenses related to clean-up. Id. The matter was filed in Ramsey County District Court.

Prior to filing its complaint, Plaintiff received two payments from Reliance, which totaled approximately $253,718.27, and represented reimbursement for Plaintiff's

clean-up and disposal, and Reliance's estimation of the depreciated value of Plaintiff's damaged property. Id. Within its complaint, Plaintiff demanded additional compensation from Reliance, alleged that Reliance's adjuster failed to use commercially reasonable methods in its depreciation calculations, and that Reliance breached its contract with Plaintiff. Id.

Plaintiff also demanded compensation from the remaining Defendants upon a negligence theory, such that Randy Lee (and American Feed Industry Insurance Company Risk Retention Group, Inc. as Randy Lee's employer and/or principal) failed to provide Plaintiff with adequate insurance coverage by failing to procure an insurance policy that provided both for the replacement cost of damages to Plaintiff's property and lost business income. Id. In particular, Plaintiff alleged that Randy Lee failed to notify Plaintiff when he switched Plaintiff's property insurance from a policy that provided for replacement cost to a policy that provided for the actual cash value of damaged property. Id. In addition, Plaintiff claimed that Randy Lee failed to notify Plaintiff when he provided it with a policy that lacked coverage for business loss. Id.

Defendants' counsel filed a notice of removal to the United States District Court for the District of Minnesota on March 16, 2001. Reliance made its initial disclosure on May 31, 2001. Defendants made their initial disclosure on August 7, 2001, and served Plaintiff with their discovery requests on the same day.

On January 24, 2002 all parties entered into a "Joint Stipulation and Proposed Order to Stay All Proceedings." The catalyst for this agreement was the placement of Reliance into rehabilitation proceedings by the Insurance Commissioner of Pennsylvania based on the "poor financial health" of Reliance and the Rehabilitator's petitioning the

Commonwealth Court of Pennsylvania to approve an Order of Liquidation for Reliance. Id. at ¶ ¶ 1 and 4. The parties agreed that "a stay of these proceedings will help to conserve Reliance's assets and facilitate the orderly and efficient adjudication and satisfaction of claims and litigation against Reliance and its insureds." Id. at ¶ 7.

Paragraphs 8 through 12 contain the substantive provisions as they concern the stay of litigation of this matter. Paragraph 8 contains the parties' agreement that this matter "shall be stayed indefinitely in favor of the state insolvency proceedings in Pennsylvania." Id. Within paragraph 9, the parties agreed that the "stay shall be without prejudice to any rights of any party." Id. Paragraph 12 tolls the statute of limitations. Id.

Paragraphs 10 and 11 contain a roadmap of the future of the litigation which hinged upon the result of Plaintiff's claims against Reliance. Paragraph 9 states

> "[t]he parties agree and stipulate that the stay shall be effective until plaintiff Feed Product North's claims against Reliance are fully and finally adjudicated within the state insolvency proceeding in Pennsylvania, as governed by the laws of the Commonwealth of Pennsylavnia, or until this stay is lifted by Order of this Court upon motion of one of the parties and for good cause shown. In the event that Feed Product North's claims against Reliance are fully and finally adjudicated within the state insolvency proceeding in Pennsylvania, as governed by the laws of the Commonwealth of Pennsylvania, the parties agree to jointly move for a dismissal of this matter with prejudice and with each party bearing its own costs, fees, and expenses."

Id. Emphasis added. Paragraph 10 provides that

> "[i]n the event that Feed Product North's claims against Reliance are not fully and finally adjudicated in the state insolvency proceeding in Pennsylvania and the stay of this matter is lifted, the parties agree that additional time will be needed to complete discovery in this matter…

Id. Emphasis added.

On December 1, 2004, Plaintiff's counsel filed his notice of motion and motion to lift the stay. Within his Affidavit at paragraph 3, Plaintiff's counsel cited paragraph 10 of

the joint stipulation as the basis for his motion to lift the stay. In paragraph 4 of his affidavit, Plaintiff's counsel noted that

> "Plaintiff's claim against [R]eliance has now been adjudicated pursuant to the Notice of Determination…the Notice of Determination [e]ffectively resolves plaintiff's claim against Reliance. Note than other than collecting monies due plaintiff from Reliance pursuant to the Notice of Determination, plaintiff does not plan on further pursuit of Reliance in this action."

Id. [emphasis added] Plaintiff's counsel noted in paragraph 5 that counsel for Defendants did not raise objection to the Notice of Determination. Within paragraph 6 of his affidavit, Plaintiff's counsel states that

> "[s]ince the plaintiff's claim against Reliance is resolved, it is now appropriate to lift the stay on these proceedings and allow plaintiff to proceed with its claims against defendants American Feed Industry Insurance Company Risk Retention Group, Inc[.], and Randy Lee."

Id.

The Notice of Determination attached to the affidavit of Plaintiff's counsel demonstrates that Plaintiff settled its claims with Reliance for an additional payment of $47,082.25. Id.

## IV. APPLICABLE LAW

### A. Summary Judgment

Courts should look favorably upon Motions for Summary Judgment to further the just, speedy and inexpensive resolution of civil litigation. Celotex Corp. v. Catrett, 477 U.S. 361 (1985); Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986); Matushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 474 (1986); In re Estate of Bush, 302 Minn. 188, 211, 224 N.W. 2d 489, 503 (1974). The Minnesota Supreme Court has defined the

appropriate standard for summary judgment by holding that a moving party is entitled to judgment as a matter of law if

> a non-moving party presents evidence which merely creates a metaphysical doubt as to a factual issue and which is not sufficiently probative with respect to an essential element of the non-moving party's case to permit a reasonable person to draw different conclusions

DHL, Inc. v. Russ, 566 N.W. 2d 60 (Minn.1997) (citing Nicollet Restoration, Inc. v. City of St. Paul, 533 N.W.2d 845, 847-48 (Minn.1995); Bob Useldinger & Sons, Inc. v. Hangsleben, 505 N.W. 2d 323, 328 (Minn.1993)).

The burden is on the non-moving party to produce sufficient facts to raise a genuine issue of material fact. Thiele v. Stich, 425 N.W. 2d 580, 583 (Minn. 1988). It is not sufficient for the non-moving party to rely upon the facts alleged in its pleadings, general statements of fact, or mere averments. Rather, the non-moving party must come forward with specific facts showing that there are genuine issues for trial. Minn. R. Civ. P. 56.05; Hunt v. IBM Mid-America Employer's Fed. Credit Union, 384 N.W. 2d 853, 855 (Minn.1986). Moreover, the non-moving party must present evidence which is admissible at trial. See, Boulevard Del, Inc. v. Stillman, 343 N.W.2d 50 (Minn. Ct. App. 1984).

If the non-moving party fails to meet its burden of coming forward with admissible evidence showing genuine issues of material fact for trial, summary judgment is mandated. Minn. R. Civ. P. 56.05; see also DHL, 566 N.W.2d 60 (*citing* Celotex, 361; Anderson, 477 U.S. 242; Matushita Elec. Indus. Co., 475 U.S. 474).

On appeal, the reviewing court must determine whether there are genuine issues of material fact and whether the trial court erred in its application of law. Writers, Inc. v. West Bend Mut. Ins. Co., 465 N.W.2d 419, 422 (Minn.Ct.App.1991).

B. Contract Enforcement

A contract is "a promise, or a set of promises to which the law attaches a legal obligation." Cedarstrand v. Lutheran Bhd., 263 Minn. 520, 117 N.W.2d 213 (1962). A promise "is an assurance, in whatever form of expression given, that a thing will or will not be done." Id. Minnesota law provides that extrinsic evidence of "discussions prior to or contemporaneous with the execution of a written instrument" is inadmissible by the parol evidence rule, when that evidence "contradicts or varies the terms of the written agreement." Gutierrez v. Red River Distributing, Inc., 523 N.W.2d 907, 908 (Minn.1994). However, if a written agreement is ambiguous on its face, such extrinsic evidence may be admitted to establish the intent of the contracting parties. Maurice Sunderland Architecture, Inc. v. Simon, 5 F.3d 334, 337 (8th Cir.1993). "The question of whether an ambiguity exists in a contract is to be determined by the court as a matter of law." Blattner v. Forster, 322 N.W.2d 319 (Minn.1982).

A written agreement is ambiguous when, on its face, it is "susceptible to more than one interpretation." Lamb Plumbing & Heating Co. v. Kraus-Anderson, Inc., 296 N.W.2d 859, 862 (Minn.1980). The determination whether ambiguity exists must be made "solely on the language of the contract." ICC Leasing Corp. v. Midwestern Mach. Co., 257 N.W.2d 551, 554 (Minn.1977). "The sense of a word depends on how it is being used; only if more than one meaning applies within that context does ambiguity arise." Board of Regents v. Royal Ins. Co. of Am., 517 N.W.2d 888, 892 (Minn.1994). If the terms of a contract are ambiguous, their meaning must be determined as a question of fact. Employers Liab. Assur. Corp. v. Morse, 261 Minn. 259, 111 N.W.2d 620 (1961).

## V. ANALYSIS

### A. The Joint Stipulation is an unambiguous agreement and its plain language requires that Plaintiff's claims against Defendants be dismissed, as there are no longer any material factual issues in dispute.

The joint stipulation entered into by the parties in this litigation is a written, and enforceable, contract: it contains a set of promises, such that each party agreed to the stay of the litigation until such time as either Plaintiff's claims against Reliance were fully and finally adjudicated or until one of the parties filed a motion in good cause with this Court to lift the stay. See paragraphs 7 – 12. The stipulation is based upon valuable consideration: each party gave up its right to assert its claims or defenses for the promises to do the same of each of the other parties. Id. As indicated on pages 4 and 5 of the joint stipulation, counsel for each party executed the stipulation, and there was mutual assent of the parties. As discussed in more detail below, the terms of the stipulation are clear and unambiguous. Therefore, this Court must enforce the terms of the joint stipulation and dismiss Plaintiff's claims against Defendants.

#### 1. Conditions for Lifting the Stay

As described within the undisputed facts, paragraph 10 of the joint stipulation was the paragraph that Plaintiff's counsel utilized to obtain this Court's dismissal of the stay of litigation. This provision contains three main parts – conditions for, and effect upon, lifting the stay. The first sentence provides for two conditions wherein the parties agreed that the stay could be lifted: when Plaintiff's claims against Reliance were fully and finally adjudicated within the insolvency proceeding; or, when this Court agreed to lift the stay upon the motion of any of the parties for good cause shown. These are the only two, disjunctive options given for lifting the stay within the

entire joint stipulation and they are clearly divided by the sentence structure and by the language utilized. Paragraph 10 states that: either the stay may be lifted by Plaintiff's settlement with Reliance, or the stay may be lifted upon the Court's acceptance of a party's motion to lift the stay, made with good cause. There is no susceptibility here that reasonable minds could find more than one interpretation of the terms in paragraph 10.

In discussing the settlement option for lifting the stay, the parties' utilized the terms "fully and finally adjudicated within the state insolvency proceeding in Pennsylvania." It is clear then, that full and final adjudication would occur when Plaintiff's claims were determined within the scope of Reliance's liquidation, as evidenced by the Notice of Claim of the Rehabilitator. No other conditions were given to describe when Plaintiff's claims against Reliance were "fully and finally adjudicated." These terms describe a definite event within a very limited context: full and final adjudication of Plaintiff's claims against Reliance, within the insolvency proceeding in Pennsylvania.

Based upon the terms utilized by the parties, it is clear that once Plaintiff's claims with Reliance were settled (or "fully and finally adjudicated") by the Rehabilitator, that there would be no further point in continuing this litigation. The effect of this result is made even more clear by the imposition of the terms "within the state insolvency proceeding." Thus, adjudication of Plaintiff's claims against Reliance was considered to be only that insolvency proceeding taking place in Pennsylvania. The parties' meaning is crystal clear by their choice, and limitation, of terms.

2. Effect of Lifting the Stay

Plaintiff's counsel based his affidavit upon the settlement of Plaintiff's claims against Reliance, and indeed, he admitted that Plaintiff does not plan on further pursuit of Reliance in this litigation. See paragraphs 4 and 6 of the Affidavit of Robert C. Black. The only outstanding issue between Plaintiff and Reliance appears to be the timing of the payment of monies agreed upon within the Notice of Determination. Id. at paragraph 6.

The second sentence within paragraph 10 requires all parties to jointly move for a dismissal of the litigation in the event that Plaintiff's claims against Reliance are fully and finally adjudicated within the insolvency proceeding. Within paragraph 11, the parties' provided initial deadlines for continuation of this litigation in the event that Plaintiff's claims against Reliance were not fully and finally adjudicated within the insolvency proceedings.

Within the joint stipulation, there is a pairing of the two conditions within the first sentence of paragraph 10 (settlement or continued litigation) and their respective pairing with the last sentence of paragraph 10 and the first sentence of paragraph 11 (settlement or continued litigation). The placement of these terms, as well as their descriptions, have an obvious meaning, and are not susceptible to different interpretations than their clear language demonstrates. It is appropriate to "examine the disputed language in the context of the entire agreement." Medtronic, Inc. v. Catalyst Research Corp., 518 F.Supp. 946, 950 (D.Minn.1981). Based upon the plain language and organization of paragraphs 10 and 11 of the joint stipulation, Plaintiff agreed to dismiss

its any of its further and additional claims against Defendants upon its settlement of claims with Reliance within the insolvency proceeding in Pennsylvania.

B. The terms of the Joint Stipulation dispose of any remaining factual issues that might exist between Plaintiff and Defendants, therefore Defendants' motion for summary judgment should be granted.

As Plaintiff has settled its claims with Reliance, its only option now is to join with Defendants and move the Court for a dismissal of this litigation. The law favors the settlement of disputed claims. Eggleston v. Keller Drug Co., 120 N.W.2d 305, 307 (1963). The joint stipulation entered into by Plaintiff, Reliance, and Defendants is akin to a settlement agreement. Plaintiff agreed to settle its further and additional claims against Defendants upon its settlement with Reliance. Minnesota courts have routinely reviewed the terms of settlement agreements to determine the absence, or presence, of ambiguity. The Minnesota Court of Appeals' decision in Ralph D. Martinson, Ass'n, Inc. v. Leverling and Tomlinson, is instructive. 1996 Minn.App.LEXIS 736. Appellant Tomlinson and defendant Levering hired respondent Martinson to provide real estate consulting services. The parties entered into consulting agreements, and as security for the promissory notes given to Martinson, Tomlinson assigned him forty percent interest in his development company. Tomlinson and Levering later became unable to make all of the payments required to Martinson pursuant to their agreements. Martinson sued, but the parties were able to come to agreement and they entered into a settlement agreement. The relevant terms of settlement agreement for the appeal were:

> "Ralph D. Martinson Assoc., Inc., and Ralph D. Martinson and W.E. (Gene) Tomlinson, hereby release each other from all claims of any kind or nature arising out of the subject matter of this suit except claims for enforcement of this agreement and of assignments previously made."

Id. at 2. Seven years after the agreement was signed, Tomlinson's development company sold some of its real estate and distributed the proceeds. Martinson was not a recipient, and he a dispute arose when Tomlinson refused to give Martinson his share of the distribution. Tomlinson argued that the "assignment language in the settlement agreement was ambiguous and could not be enforced against him." Id. at 3.

The Minnesota Court of Appeals held that the settlement agreement "release the parties from all claims "except claims for enforcement of this agreement and of assignments previously made." This language unambiguously gave Martinson the right to enforce the settlement and any assignment made before the settlement. Tomlinson assigned interest to Martinson was enforceable under the settlement agreement, and Tomlinson must pay Martinson its share of the PDC [development company] distribution pursuant to the assignment."

Although the facts in the Martinson case are not exactly similar to those in this litigation, the Court's interpretation of the plain language of the agreement is instructive here. As noted above, the settlement agreement contained three main components, Martinson released Tomlinson from "all claims of any kind or nature," "arising out of the subject matter of this suit," except "claims for enforcement of this agreement and of assignments previously made." These terms are clear, definite, and provide for a limited set of claims and parties, like the terms within Paragraphs 10 and 11 of the joint stipulation.

Now, in direct opposition to the clear and unambiguous terms of paragraphs 10 and 11, Plaintiff now makes its attempt for a second bite of the apple. Plaintiff's actions are in direct contravention of its agreement with Reliance and Defendants, as

demonstrated by the clear and unambiguous terms of the joint stipulation. Moreover, Plaintiff's motives are especially dubious in view of the fact that Plaintiff made no mention within its motion that it was seeking a lift of the stay based upon good cause. Rather, Plaintiff's motion and supporting documents hinge upon Plaintiff's claims being "fully and finally adjudicated" with Reliance within the insolvency proceedings.

It is possible that Plaintiff has interpreted the "or" within the first sentence of paragraph 10 as a conjunctive "and", however this reading would change the meaning of the stipulation only in so far as there would be no alternate procedure in which to seek removal of the stay, aside from Plaintiff's settlement with Reliance within the insolvency proceedings.

Finally, the stipulation is also very clear and unambiguous in regards to what it does <u>not</u> say. Plaintiff commenced its claim alleging that Reliance had not paid Plaintiff what it had due and owing to it under the terms of the insurance policy in question. Plaintiff also sued Defendant agent and insurance agency claiming negligent errors and omissions. The stipulation executed by Plaintiff, however, makes no reservation of separate claims against the agent and agency; said claims to be the subject of further litigation upon the full and final adjudication of Plaintiff's claims against the insurance company's trustees. To justify the continuation of this lawsuit, however, Plaintiff would now have the Court engraft this language and meaning into an otherwise complete and unambiguous settlement stipulation. Because there is no legal authority for the Plaintiff or the Court to do so, Defendants motion for summary judgment entered in their favor should be granted.

## VI. CONCLUSION

The beauty of the joint stipulation is in its simplicity and clarity. To allow Plaintiff to spin its web and distort the plain language of the agreement's terms would result in an injustice. The plain language of the joint stipulation calls for a dismissal of Plaintiff's claims against Defendants now that Plaintiff has settled its claims against Reliance within the insolvency proceedings in Pennsylvania. Thus, Defendants respectfully request this Court to dismiss Plaintiff's case against Defendants with prejudice.

Dated: February 25, 2005

s/ James O. Redman
James O. Redman (#90013)
James O. Redman, PLC
325 Main Street, #200
Red Wing, MN 55066
(651) 267-4166

Attorney for Defendants American Feed Industry Insurance Company