UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

FEED PRODUCTS NORTH, INC.,

Plaintiff,

Court File No. 01-CV-487

v.

REPLY MEMORANDUM OF AMERICAN FEED INDUSTRY INSURANCE COMPANY RISK RETENTION GROUP, INC. AND RANDY LEE

RELIANCE INSURANCE COMPANY OF ILLINOIS, INC., AMERICAN FEED INDUSTRY INSURANCE COMPANY RISK RETENTION GROUP, INC., and RANDY LEE,

Defendants.

This Memorandum of Law is submitted on behalf of American Feed Industry Insurance Company Risk Retention Group, Inc. and Randy Lee (hereinafter "American and Lee"), in reply to the Motion for Relief from Stipulation made by Feed Products North, Inc. (hereinafter "Plaintiff") and in support of the motion of American and Lee for Summary Judgment in the above-captioned matter.

I. Because the Terms of the Stipulation are Unambiguous, it is Reversible Error for this Court to Consider Plaintiff's Intent.

Plaintiff argues that summary judgment is inappropriate in this matter because Plaintiff never intended to dismiss its claims against American and Lee upon resolution of its claims against Reliance. Plaintiff concludes that since it never intended dismissal, the terms of the Stipulation are ambiguous and result in a question of material fact barring summary judgment.

As discussed in the Memorandum and Supplemental Memorandum of American and Lee, the parole evidence rule does not allow consideration of the parties' intent in its interpretation of

an unambiguous, written instrument. Only when an agreement is determined to be ambiguous, may a Court then consider the parties' intent during formation.

Plaintiff's argument that the stipulation is ambiguous appears to be based upon two premises: 1) the lack of recitation of "American and Lee" within each paragraph of the Stipulation; and 2) that American and Lee have no interest in the insolvency proceedings nor their result, so they can receive neither benefits nor losses from the outcome of Plaintiffs' settlement with Reliance.

A. There is no ambiguity within the Stipulation.

Plaintiff argues that the terms of Paragraph 10 are ambiguous because Plaintiff's claims against American and Lee are not mentioned, nor is mention made of the dismissal of these claims. Aside from its cursory conclusion, Plaintiff does not attempt to explain how or why the terms of Paragraph 10 might be susceptible to more than one meaning.

Although Paragraph 10 does not specifically recite the names of all parties, reference is made to American and Lee, as they are "parties" to the Stipulation. The first sentence of Paragraph 10 notes:

> "[t]he parties agree and stipulate that the stay shall be effective until plaintiff Feed Product North's claims against Reliance are fully and finally adjudicated within the state insolvency proceeding in Pennsylvania, as governed by the laws of the Commonwealth of Pennsylvania, or until this stay is lifted by Order of this Court upon motion of one of the parties and for good cause shown."

Joint Stipulation at 3. Emphasis added. The second sentence of Paragraph 10 provides:

> "In the event that Feed Product North's claims against Reliance are fully and finally adjudicated within the state insolvency proceeding in Pennsylvania, as governed by the laws of the Commonwealth of Pennsylvania, the parties agree to jointly move for a dismissal of this matter with prejudice and with each party bearing its own costs, fees, and expenses."

Id. Emphasis added. The parties to the Stipulation were Plaintiff, Reliance, and American and Lee, and the Stipulation makes no distinction among the parties or their respective rights. Id. at 4-5. Based on the language of the Stipulation, when the parties meant only "Plaintiffs and Reliance", these terms were specifically stated. Moreover, the emphasized provisions of the second sentence of Paragraph 10 indicate that the parties would jointly move for a dismissal "of this matter" and "with each party bearing its own costs, fees, and expenses." If, as Plaintiff argues, this provision were only to concern Plaintiff and Reliance, it would not have been necessary to add this provision because American and Lee would have no claims against Plaintiff or Reliance for costs, fees, or expenses. The term "parties" within Paragraph 10, as well as in the entire Stipulation refers to Plaintiff, Reliance, and American and Lee. Therefore, the terms within Paragraph 10 are not susceptible to more than one meaning.

The Minnesota Court of Appeals has held that reference to a term, without a complete description or definition of that term, does not require a finding of ambiguity. Apple Valley Red-E-Mix, Inc. v. Mills-Winfield Engineering Sales, Inc., 436 N.W.2d 121, 123 (Minn.Ct.App.1989). Apple Valley concerned a dispute over an equipment lease, wherein the lessee claimed damages based upon the failure of a machine to meet an unloading rate. The model name of the machine was included within the contract. The trial court found that reference to the model name was ambiguous because "[t]he agreement provide[d] no technical specifications. This machine is a highly sophisticated piece of equipment, which is not in common consumer use. It is not like a Chevy ½ ton pick-up, where naming along transmits reasonable information." The appellate court reversed, and held that it was error to permit parole evidence because "[b]oth parties knew which piece of machinery the term Docksider II-V referred to." Id. At 123.

Following the logic of the Minnesota Court of Appeals, all parties to the Stipulation understood who the "parties" were at the time of formation. This would appear to be why no distinction was made between the three entities comprising the signatory "parties." Thus, the fact that the term "parties" was not further defined, does not create ambiguity within Paragraph 10. Therefore, the term "parties" within Paragraph 10 refers to Plaintiff, Reliance, and American and Lee, and by the full and final adjudication of Plaintiff's claims against Reliance, the parties agreed to a joint dismissal of the Plaintiff's claims against Reliance and against American and Lee.

Plaintiff is correct in asserting that the insolvency proceeding was the impetus for the creation and formation of the Stipulation. However, the parties' agreements to execute the stay, and the choice of the provisions utilized within the stay, were contractual in nature, and this process was a bargained-for exchange. Paragraph 10 was a result of this process.

B. Benefits Conferred by Stipulation

Plaintiff simply fails to provide a meaningful argument as to why any ambiguity exists within any provisions of the Joint Stipulation. The second prong of Plaintiff's argument in opposition to the motion of American and Lee is that it would have been illogical for Plaintiff to agree to dismiss its claims against American and Lee as a result of Plaintiff's settlement with Reliance. Plaintiff delves into great detail to demonstrate the reasons why American and Lee would have no interest in the insolvency proceedings or their result and that they can receive neither benefits nor losses from the outcome of Plaintiff's settlement with Reliance per the Stipulation. However, this is precisely in fact, the result that Plaintiff agreed to in the Stipulation.

Plaintiff notes that "the only relation between the claims is that they spring from the same facts and circumstances" yet at the same time, Plaintiff insists that "it would have been

nearly impossible to proceed against [Defendants] without including Reliance." Plaintiff's Memorandum at 3-4. Plaintiff could have brought its suit against American and Lee during Reliance's insolvency. Plaintiff made a decision to offer to stay the proceedings against all parties in exchange for an executed Stipulation and the settlement provisions within Paragraphs 10 and 11. Plaintiff refers to Paragraph 12 and discusses the reasoning for its inclusion to "specifically…preserve plaintiff's claims against American and Lee. This language would clearly not be necessary if it was the intention of the stipulation to dismiss claims against American and Lee." Id. at 4. However, Plaintiff's reasoning does not make sense. Paragraph 12 would have been necessary regardless to preserve Plaintiff's rights against American and Lee in the event that the insolvency proceedings lasted beyond the limitations period. For example, if it took Plaintiff over six years to settle its claims against Reliance, and no settlement was forthcoming, then Plaintiff could have asserted its claims against American and Lee on the basis of Paragraph 12.

Finally, Plaintiff alleges that there was no "mutual assent" of the parties to the Stipulation. This is erroneous based upon the signature of Plaintiff's counsel to the Stipulation and his apparent review of the document before signature. The fact is, Plaintiff's arguments are flawed: Plaintiff now wants to modify its agreement with the Court's assistance to realize a greater benefit in contradiction of the written stipulation. The law does not provide for this.

II. Plaintiff Is Not Entitled to Relief from the Joint Stipulation in the Absence of Mistake of Fact or Improvidence, thus an Award of Defendant's Motion for Summary Judgment is Appropriate.

Plaintiff alleges within its motion that if the terms of the Joint Stipulation purport to dismiss its claims against American and Lee, that Plaintiff is then entitled to relief from the

stipulation "in the interests of justice because it was never intended to dismiss American and Lee." Id. at 5. However, a review of Minnesota case law does not support Plaintiff's request, and in fact, requires that the stipulation be enforced as a negotiated and bargained-for contract among the parties.

The law favors settlement of claims without recourse to litigation. Employers Mut. Cas. Co. v. Chicago, St. Paul, Minneapolis & Omaha Ry. Co., 50 N.W.2d 689 (Minn.1951). A stipulation may be set aside by leave of this Court for good cause shown when there is evidence that during formation, any of the following occurred:

1. fraud or collusion (Levine v. Holdahl-Colstad, Inc., 88 N.W.2d 865, 868 (Minn.1958));
2. mistake of fact (Id.);
3. lack of authority to bind by repudiating party's attorney (Gran v. City of St. Paul, 143 N.W.2d 246 (Minn.1966));
4. undue influence (Levine, 88 N.W.2d at 868); or
5. incompetence (Fletcher v. Taylor, 182 N.W. 437 (1921)).

In some instances, Minnesota courts have allowed the avoidance of a stipulation "in equity and good conscience" when it appeared that the repudiating party acted improvidently. Levine, 88 N.W.2d at 871. The party seeking to establish a basis for avoiding the stipulation has the burden of proof. Schoenfeld v. Buker, 114 N.W.2d 560, 566 (Minn.1962).

A court's vacation of a stipulation is reviewed under an abuse of discretion standard. Thus, the court's action "will not be reversed unless it be shown that the court acted in such an arbitrary manner as to frustrate justice." Myers v. Fecker, 252 N.W.2d 595, 597 (Minn.1977) *citing*, Schoenfeld, 114 N.W.2d at 566. Thus, there is no abuse of discretion when the court refuses to vacation a stipulation in the absence of fraud, duress, or mistake.

A. The Stipulation must be enforced because there is no evidence that any of its terms or any of the parties' actions during formation were the result of a mistake of fact.

Plaintiff alleges that the language within the stipulation purporting to dismiss American and Lee is a mistake because Plaintiff never intended to dismiss its claims against them. The only evidence Plaintiff submits to support its allegations of mistake are statements made by its counsel in paragraphs 6 and 7 of his affidavit, dated March 24, 2005. Within Paragraph 6, Mr. Black states that "[p]rior to executing the stipulation [he] reviewed the stipulation, and read paragraph 10 to be related to Reliance, not all defendants. Affidavit of Robert C. Black, III at 2. Further, I certainly never intended to dismiss American and Lee after plaintiff's claim against Reliance was resolved." Id. Paragraph 7 contains similar statements of Mr. Black's past intent, "[m]y intention was that upon resolution of the claims against reliance, that the parties would dismiss Reliance from the proceedings, and that the proceedings against American and Lee would continue before the Minnesota Court." Id.

Plaintiff seems to suggest that either a mutual mistake was made by both Plaintiff and American and Lee, or that Plaintiff made a unilateral mistake and therefore, that Plaintiff should not be held to the terms of the stipulation and the required dismissal of its claims against American and Lee. A finding of a mistake by Minnesota courts requires evidence of some substantial misunderstanding of at least one, or both, of the contracting parties during formation. For example, in one of the seminal cases, Levine v. Holsdahl-Colstad, Inc., the Minnesota Supreme Court found mutual mistake when the parties, as the basis for their stipulation, agreed to have an appraisal of land performed to settle their litigation concerning trespass. 88 N.W.2d 865. During negotiations, there was evidence

that the parties believed the value of the property to be in the range from $12,500 to $17,000. The appraisers, however, arrived at the sum of $7,200. The court allowed avoidance of the stipulation because "the appraisal came as a surprise to defendants under the mistaken belief that the appraisal would fall within the price range indicated, that is $12,500 to $17,000." Id. at 871. Emphasis added.

Minnesota courts have also found evidence of mistake when one contracting party has a superior knowledge of certain facts underlying a stipulation, and this party utilizes this knowledge to its advantage against the other contracting party. United States v. Reserve Mining Co. dealt with the dumping of pollutants into Lake Superior. 394 F. Supp. 233 (D.Minn.1974). Prior to bringing its suit against Reserve, the Minnesota Pollution Control Agency ("MPCA") entered into a stipulation with Reserve that it would not bring suit during the completion of the pollution abatement program agreed to between Reserve and MPCA. Reserve agreed to "not cause any emission from its facilities to occur at a level beyond the present level." The "present level" was defined in terms of the presence of suspended particulate matter in the Silver Bay area during the months of July-August 1972. Testing was later performed and the results indicated not only an increased level of particulates above the "present level" but also a change in the character of these particulates. The District Court noted:

> "the quality of the discharge into the ambient air took on a different character when it was discovered [by the State] that millions of carcinogenic fibers were among the emissions from Reserve's stacks. This fact was not discovered until after the stipulation agreement had been entered into. Whereas certain levels of emission of relatively harmless particles may be acceptable to the state, the same level of emission of carcinogenic fibers may not. To the extent that contract principles are operative, the agreement could be rescinded on the grounds of mutual mistake as to an essential element of the bargain."

Id. at 243.

Plaintiff's allegations do not rise to the same level or type as the cases discussed above. In Levine, the parties contracted away their rights to protracted litigation on the basis of a neutral's decision. Prior to entering into the stipulation they agreed to accept damages within a certain range. However, the damages determined were in an amount unforeseen by the parties, and mistake was found on this basis. The same facts do not appear in this case. The terms of the Stipulation are conclusive and demonstrate clearly, Plaintiff's intent to dismiss its claims against American and Lee upon the full and final adjudication of its claims against Reliance.

Moreover, the facts in Reserve demonstrate that Reserve was aware of the harmfulness of the particulates that were being emitted, while the MPCA did not. On the basis of Reserve's knowledge, the court found that the MPCA would be allowed to rescind its stipulation with Reserve. American and Lee had no superior knowledge of any facts as compared to Plaintiff during formation of the stipulation. Plaintiff made its decision to enter into the Stipulation freely and without any contrivance on the part of Reliance or American or Lee. Inaccurate forecasting of future consequences is a mistake of opinion, not fact. Richardson v. Chicago, Milwaukee & St. Paul Ry., 196 N.W. 643, 644 (Minn.1924). Therefore, Plaintiff's request for relief from the stipulation must be denied.

Finally, a review of the Minnesota cases concerning mistake as the basis for relieving a party from a stipulation indicate that a repudiating party must do more than present a mere allegation of mistake in order to meet its burden of proof. Johnson v. Angelus Convalescent Home concerned a dispute over the terms of a medical expense

provision with a stipulation underlying the court's award. 354 N.W.2d 440 (Minn.1984). This provision specified:

> "That Employer and Insurer shall pay, provide or reimburse, and shall continue to pay, provide or reimburse for the reasonable and related costs of medical treatment arising out of the incident and injury described in part I herein. It is further understood that the *Employee* will pay all of Dr. Thomas Johnson's expenses to date. The Employee agrees that the employer and Insurer will not be responsible for any charges from Dr. Thomas Johnson or by the Plymouth Avenue Medical Center in the future."

The plaintiff filed a petition to vacate the award, alleging that the term "the Employee" in the second sentence "was mistakenly substituted" for the terms "the Employer and Insurer" because the parties intended to provide that all of Dr. Johnson's expenses until the date of the stipulation would be paid for by the employer and insurer. Id. at 441. She argued that the sentence structure of the provision did not support its interpretation because "if the parties had intended that [plaintiff] would be liable for all of the medical charges of Dr. Johnson and the Medical Center, past and future, they would have expressed that intent in one succinct statement." Id. The plaintiff provided the court with three pieces of evidence to supported her allegations of the parties' intent: 1) her counsel realized the error five months later, and he notified the insurer of the mistake; 2) letter sent by her counsel to the Medical Center one month before formation of the stipulation containing the following "under the terms of the settlement, all of Dr. Johnson's reasonable medical bills to date will be paid but hereafter, the workers compensation insurer will not pay any future medical bills of Dr. Johnson"; and 3) letter from insurer's counsel to the Department of Public Welfare, referring to their prior discussions "that my client would pay all medical expenses up until August of 1979" and

that the insurer "would reimburse you for one-half of all medical expenses related to Ms. Johnson's back condition." Id.

The Minnesota Supreme Court found plaintiff's evidence convincing, and it noted that both letters supported the claimed mistake, and that the letter from the insurer's counsel was "inconsistent with their present position." The court further explained that "the employer-insurer did not allege a practice of avoiding payment of all medical expenses incurred by injured employees with Dr. Johnson and the Medical Center. In this case it appears that employee did not receive any medical treatment elsewhere, and a settlement providing that the employer-insurer would not be liable for any part of the employee's medical expenses to the date of the award seems unusual. That consideration, as well as the fact that the evidence as a whole tends to support the claim of mistake, persuades us that the order denying the petition should be set aside..." Id. at 442. Emphasis added.

Plaintiff has only provided its counsel's affidavit in support of its allegations that the terms in the Stipulation are the result of mistake. Plaintiff's feeble attempt to provide evidence of any "mistake" is telling. It simply has not presented any facts, material or otherwise, that are in dispute to defeat the motion for summary judgment of American and Lee. Therefore, American and Lee are entitled to their requested relief.

B. The Stipulation must be enforced because there is no evidence of any improvidence in its formation or results.

Plaintiff's allegations of improvidence are an after-thought and are limited to two brief sentences at the close of the affidavit of its counsel: 1) that if the Stipulation is enforced, Plaintiff's claims against American and Lee will be eliminated; and 2) that Plaintiff will lose "legitimate claims" worth $150,000. Plaintiff's Memorandum at 6. Plaintiff concludes that this

Court would engage in "manifest injustice" by taking any action short of vacating the Stipulation. Id. It must be noted that Plaintiff's arguments as to any value of its claims against Defendants are speculative at best at this point in time.

Plaintiff's arguments are misplaced and are not supported by Minnesota law. Although the courts have not expounded a list of facts requiring a finding of improvidence, the following case is illustrative. Reference has already been made to the Levine decision above. Within this case, the Minnesota Supreme Court held that the parties' stipulation had been made improvidently and in equity and good conscience ought not to stand. The basis for this holding was the insufficiency of the appraisal. The court delved into great detail concerning the inherent defects in the appraisal procedure that the trial court utilized. For example, it appears that the appraisers determined the property's value in a vacuum; the court noted that the property should have been appraised as a unit on the basis of its past use and earnings as a commercial property with regard to its similar use in the future. In addition, the court described the inability of the parties to review the appraisers' decision, and it stated that the appraisers should have been given reasonable minimum and maximum figures, approved in advance by the parties. Finally, the court discussed the apparent and unreasonable restrictions placed on the appraisers, which included their inability to discuss the property and its use with the parties.

In the instant case, Plaintiff has not explained why or how the Stipulation was improvidently made, nor has it proffered any evidence supporting its request for relief. Based on the holding in Levine, there must be evidence of a fatal flaw within the procedures utilized by parties during formation or as a condition to formation before a Minnesota court will make a finding of improvidence. Because Plaintiff has failed to allege any facts concerning

improvidence, it would be an abuse of discretion for this Court to provide any relief other than a grant of Defendants' motion for summary judgment.

III. Conclusion

For the foregoing reasons, Defendants American and Lee are entitled to Summary Judgment and a dismissal as a matter of law of Plaintiff's claims in their entirety and with prejudice.

Dated: April 10, 2005

s/ James O. Redman
James O. Redman (#90013)
James O. Redman, PLC
325 Main Street, #200
Red Wing, MN 55066
(651) 267-4166

Attorney for Defendants American Feed Industry Insurance Company Risk Retention Group, Inc. and Randy Lee